U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 3 1 2018

TONY R. MOORE, CLERK
BY: _____
DEPUTY

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

GWENDOLYN ANTEE HARDISON,          NO.: CV ___18-cv-0119___

Plaintiff,

v.                                 Judge: _____

DALE SKINNER, (Personally and in his          Magistrate: _____

Official capacity as Superintendent of

NATCHITOCHES)  PARISH SCHOOL BOARD (NPSB), and

NATCHITOCHES PARISH SCHOOL BOARD (NPSB)

Defendants

## COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATION, AND FOR INJUNCTIVE AND DECLARATORY AND OTHER EQUITABLE RELIEF; AND DEMAND FOR JURY TRIAL, ALL UNDER TITLE VII AND 42 USC 1983

1. 42 U.S.C. § 2000e et seq. [Racial Employment Discrimination] ;2. 42 U.S.C. §1983 [Equal Protection, and Discrimination under color of State Law]; 3. Louisiana La. R.S. 23:302, 23:303, 23:332 et seq. Employment Discrimination (Race).

Plaintiff, Gwendolyn Antee Hardison, appearing in proper person and pro se, alleges as follows:

1.   Plaintiff is a natural person who was employed by Defendant, Natchitoches Parish School Board, for about 41 or 42 continuous years to the date of her suspension and constructive termination from the position of Director of Federal Programs on about July 25, 2016. All acts complained of herein occurred in the course and scope of Plaintiff's employment.

2. Defendant NATCHITOCHES PARISH SCHOOL BOARD (NPSB) is a municipal corporation organized under the laws and Constitution of the State of Louisiana, and is a

1

government board or entity capable of suing and being sued.  Defendant NPSB maintains and operates and provides maintenance and upkeep of the building popularly known as the Natchitoches Parish School Board Office, located 310 Royal Street, Natchitoches, Louisiana 71457. Made Defendant Ralph Wilson ("Wilson") is the duly appointed President of Natchitoches Parish School Board. At all times relevant to this lawsuit Defendant, DALE SKINNER (Skinner), is and was the chief executive officer of Defendant NPSB, with an office at 310 Royal Street, Natchitoches, Louisiana 71457. At all relevant times Skinner, as the chief executive officer, Managed and supervised all employees and staff hired for Defendant, NPSB, including Plaintiff.

3.. JURISDICTION AND VENUE:   This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. §1983, 2000e, et seq., and 28 U.S.C. §§2201 and 2202. This Court has authority to award attorneys fees pursuant to 42 U.S.C. §1988.  Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate all state law claims.  Each and all of the acts (or threats of acts) alleged herein were done by defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, policies, customs and usages promulgated by the State of Louisiana Department of Education and the Natchitoches Parish School Board. Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this district.

RELEVANT FACTS:

2

4. . Prior to her filing for involuntary retirement as a result of intentional and disparate impact, Plaintiff had spent over 42 years as a fully competent and qualified employee with the Natchitoches Parish School Board (NPSB): 19 years as a teacher; 10 years as supervisor of federal grant programs; and the last 13 years or so as Director of Federal Programs.

5. The position as Director of Federal Programs for NPSB included responsibility for oversight of local Migrant Education Program (MEP), which essentially required me to compilate, assess and synthesize data provided by the State Migrant Education Program for periodic NPSB MEP grant applications, and to file state and federal reports; as well as to make reports to the Superintendent and elected representatives serving on the NPSB regarding the status of federal programs, including MEP.

6. In 2014, Plaintiff engaged into a hotly contested campaign to become the first African American Superintendent of Defendant, NPSB against Mr. Dale Skinner (Skinner), who was eventually selected by the NPSB as Superintendent.

7. Shortly after officially assuming the position of Superintendent, Skinner began to engage in a pattern or practice of intentionally targeting Plaintiff for mistreatment and creating a discriminatory and hostile work environment by subjecting her to more burdensome and unfavorable employment based decisions than other white or male employees who were Directors of other departments of NPSB.

8. Skinner began an intentionally and systematic pattern or practice of singling Plaintiff out for inflicting emotional and mental anguish, suffering, distress and threat of unlawful termination of employment in violating of established standing policies and practices.

9. Skinner created a pattern or practice of verbally abusing and demeaning Plaintiff in the presence of her peers and subordinate employees with loud, offensive unjustified insults, such as unprecedented denial to claimant the right to participate in audits impacting Federal Grants (which was the area exclusively assigned under her authority by NPSB); forbidding claimant to be present at staff meetings to discuss MEP (Migrant Education Program) concerns and issues, especially where federal grant funds were concerned); verbally threatening to  terminate claimant several times in the presence of witnesses and co-workers and without just explanation, contrary to customary and established policies, rules and regulations, and without any rational relation to a legitimate business purpose.

10. Plaintiff says, shows and suggests to the Court in this pleading that Skinner's mistreatment of her was intentionally outrageous, egregious, insulting, demeaning and calculated to  further Skinner plan of intentionally subjecting Plaintiff to unlawful employment discrimination based upon her race (African American) and her sex (female).

11. The Court is asked to take note that Skinner is a white male, and that Skinner treated Plaintiff disparately from the favorable treatment of white and male similarly situated department Directors, of the same or equal employment status as Plaintiff and under his management.

12. Shortly after assuming his formal duties as NPSB Superintendent of Education in September 2015, Skinner verbally informed complainant that he would not approve her request for additional Federal Grants Program staff to help apportion the increased work load and responsibilities, of which he was made fully aware.

13. It is believed that Skinner did accommodate similar requests for staff supplementation from white and male Directors of other departments under his management and authority.

4

14. At one point in 2014-2015, Skinner stated to Plaintiff that he also had unspecified concerns about the Federal Programs budget under her authority and direction but failed to provide her, when requested, with any guidance, instructions or corrective measures she should take or make, contrary to established NPSB policies, actual practices and procedures; and in denial of her due process and equal protection rights protected under the Constitution and statutes and laws of Louisiana.

15. Skinner left Plaintiff adrift in an ocean of uncertainty by refusing to provide her with specific factual allegations or evidence of willful violation of NPSB employment policies or procedures.

16. As noted by the State Network Team or Panel during an Administrative Staff meeting shortly after the end of NPSB fiscal year in July of 2015, NPSB was overtly divisive and thus unlikely to objectively reach a unanimous consensus in resolving any employment discrimination or hostile environment claim against its newly instated Superintendent.

17. NPSB did not have an established and adequate written or articulated and disseminated anti-discrimination policy, or provide any such training or guidance on reporting discrimination by the Superintendent for employees, such as Plaintiff, during the entirety of her 42 or so years of employment.

18. Plaintiff had no one in higher authority to report Skinners harassment and discrimination to with any confidence to address and stop Skinner's harassment and hostile treatment of her in the employment relationship, based upon her sex and race.

19. The harassment, verbal abuse, and disrespectful treatment of Plaintiff by Skinner continued until on about August 10, 2015, complainant was arbitrarily and capriciously suspended, with pay, by Skinner, contrary to state law.

20. Specifically, Louisiana Revised Statutes (LRS) 17:443. LRS 17:443 requires that a disciplinary action not be taken generally by a superintendent without first providing a due process notice in writing of the basis of the employment action and affording the teacher an opportunity to intelligently respond in her defense. Skinner did not provide Plaintiff an intelligible written "explanation" of the allegations and supporting documentation of or witnesses to any violation of an established policy or procedure; nor did he afford Plaintiff an opportunity to intelligently respond in her defense prior to the drastic employment action of suspension.

21. On about August 10, 2015, Skinner presented Plaintiff with a written document informing her that: "…you are suspended with pay until further notice or a hearing." No reason for this drastic employment action was given.

22. On August 11, 2015, Skinner had Plaintiff given another written document informing her that: "I will be recommending charges against you at the next school board meeting." No information was provided to inform Plaintiff of the nature of the charges, or the evidence to be used against her to justify placing her on administrative leave, contrary to policy and state law.

23. Plaintiff contends that suspension with pay for discriminatory reasons constitute an adverse employment action in violation of Title VII to which she should be entitled to adequate make whole relief through the assistance of EEOC; as well as violate laws under 42 USC 1983 in that Skinner was acting under color of state law; and in violation of the Louisiana Constitution prohibiting discrimination based on race or sex.

24. In August of 2015, Plaintiff was able to obtain legal representation through the Louisiana Education Association.

25. Although her attorney made several requests for production of documents and evidence by Skinner and NPSB to substantiate Skinner's allegations for employment misconduct by Plaintiff, NPSB and Skinner continued to delay and stone wall without ever producing any documents and the attorney seemed unable to do anything about it.

26. In December, Plaintiff's attorney communicated with her about what he felt were options for Plaintiff to exercise, including suggesting Plaintiff go back to work for two weeks and then retire: even though not one shred of evidence had been produced to prove any employment related policy violations on Plaintiff's part by Skinner and NPSB.

27. Plaintiff became continually agitated, unable to rest and sleep at night, and riddled with anger, fear and outrage about her fate at NPSB, where she had spent the best years of her life.

28. In January of 2016, Petitioner filed for and obtained approval for voluntary full retirement, although she really wanted to keep her employment with NPSB until she became about 75 years of age.

29. Plaintiff was threatened, abused, subjected to an intentional discriminatory hostile environment by Skinner.

30. NPSB had no effective anti-discrimination policy to discourage unlawful discrimination by upper management personnel such as Skinner, in his role as Superintendent of the Natchitoches Parish School Board District.

31. Skinner engaged in false light defamation of Plaintiff's character, and caused her to suffer severe outrage, embarrassment, humiliation, mental and emotional pain and suffering; as well as loss of income, the value of which will be determined at trial on the merits of this matter.

32. Plaintiff alleges that she was subjected to intentional, unbridled and disparate discrimination by Skinner because of her race (African American) and sex (female.)

33. Skinner did not treat similarly situated white and male NPSB directors unlawfully, as he did Plaintiff, although several engaged in the same or similar behavior as did Plaintiff.

34. Skinner had no legitimate reason for his intentionally outrageous, upsetting, harassing and discriminatory treatment of Plaintiff, different from similarly situated white and male NPSB employees.

35. As a result of the unlawful discrimination, harassment, and intentional infliction of emotional distress by Skinner against Plaintiff, she suffered intentionally caused emotional distress, pain and suffering, the value of which is believed to be more than $75,000.00 (Seventy five thousand dollars), exclusive of cost and legal interests; and loss of income in an amount believed to further increase the liability of all Defendants to Plaintiff in a amount reasonably believed to be above $100,000.00 (One hundred thousand dollars), exclusive of legal costs and interest.

36. Plaintiff desires and is entitled to a **Jury Trial** in this lawsuit.

37. Plaintiff desires equitable relief in accordance with the evidence and law, prohibiting the Defendants from further engaging in discriminatory practices, compelling the Defendants to implement and publish an effective discrimination policy to address all issues raised in this lawsuit

WHEREFORE, plaintiff prays that, after all due delays and proceedings be had, this Court:

(a)  Enter judgment against the defendants Dale Skinner and Natchitoches Parish School Board, jointly and solidarily, for intentional discrimination based on Plaintiff's race (African American) and sex (female) thereby causing intentional infliction of emotional distress, mental anguish pain and suffering, awarding to her an amount sufficient according to proof to compensate her for her injuries;

(b)  Award Plaintiff a certain sum for loss of income past, present and future according to proof at trial of this matter;

(c)  Award plaintiff costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1988 and other relevant statutes;

(d) Order a Jury trial in this matter as the matter in controversy is believed to be equal to or greater than $75,000.00, exclusive of interests and costs;

and (i)  Order such other and further relief in favor of Plaintiff and against the Defendants as the Court deems just and proper under the circumstances.

Respectfully submitted:

Gwendolyn Antee Hardison, Pro Se
120 Amanda Dr.
Natchitoches, Louisiana 71457
(318) 352-4858

## AFFIDAVIT

Before me, undersigned Notary Public, in and for Natchitoches Parish, Louisiana personally came and appeared **Gwendolyn Antee Hardison**, a person to me made personally known, and who after being first duly sworn deposed and said:

I, Gwendolyn Hardison Davis, am of the age of majority; I am a citizen and resident of Natchitoches Parish, Louisiana; I am the Plaintiff in the above and foregoing civil rights complaint; I have read all the allegations of fact contained therein, and I hereby certify that they are true and correct to the best of my personal knowledge, information and belief; and that the actual value of this case, exclusive of costs and interests, exceeds $75,000.00 (Seventy-five thousand dollars).

Signed: _____

GwendolynAntee Hardison, Pro Se

THUS DONE and signed before me, Notary, on on this **30th day of January, 2018**.

_____          _____
NOTARY PUBLIC                              Print Notary Name