UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **GWENDOLYN ANTEE HARDISON** | **CIVIL ACTION NO. 1:18-CV-00119** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DALE SKINNER, ET AL** | **MAGISTRATE JUDGE JOSEPH PEREZ-MONTES** |

## MEMORANDUM RULING

Pending before the Court are a Motion for Summary Judgment [Doc. 41] filed by Defendants, the Natchitoches Parish School Board ("NPSB") and Dale Skinner ("Skinner"), and a Motion to Strike Declaration of Linda Page (the "Motion to Strike") [Doc. 46] filed by Plaintiff, Gwendolyn Antee Hardison ("Hardison"). For reasons which follow, Defendants' Motion for Summary Judgment is GRANTED. The Motion to Strike is DENIED.

## BACKGROUND

Hardison, an African American female, was employed by the NPSB as the Director of Federal Programs from November 13, 2003 until January 27, 2016 [Doc. 47-2 ¶ 2]. In this position, Hardison supervised the administration of various federal programs in Natchitoches Parish, including the Migrant Education Program ("MEP") [Doc. 1 ¶ 5].

Every three years, the Louisiana Department of Education ("LDOE") engages independent third-party consultants to interview families receiving financial aid through the MEP in order to ensure that the recipients satisfy the program's eligibility requirements [Doc. 41-1 ¶ 6]. In April of 2015, the LDOE's review of MEP

1

recipient families in Natchitoches Parish revealed a high number of ineligible families receiving migrant assistance "due to the use of tactics and interview practices intended to qualify otherwise ineligible families, such as falsifying qualified work activities, using dates for ineligible moves and forging parent/guardian signatures" [Doc. 41-1 ¶¶ 7-8]. Consequently, the LDOE informed the School Board that it would conduct an audit of the NPSB's MEP records for the 2013-2014 and 2014-2015 school years [Doc. 41-4]. The audit revealed that over 60 percent of the families receiving financial aid were ineligible [Doc. 41-6 p.4], ultimately requiring the NPSB to reimburse the LDOE a total of $79,842.41 [Doc 41-1 ¶ 21].

On August 10, 2015, Skinner, the superintendent of the NPSB, placed Hardison on administrative leave with full pay and benefits pending completion of the investigation into mismanagement of the MEP [Doc. 47-2 ¶ 24]. Defendants allege that Skinner thereafter requested that the LDOE perform a complete audit of all federal programs under Hardison's administration in light of the apparent mismanagement of the MEP program [Doc. 60 ¶ 37]. Following the completion of this audit, the LDOE informed the NPSB of problems in other federal programs under Hardison's supervision [Doc. 41-1 ¶ 31]. On February 8, 2016, after consulting with legal counsel, Hardison decided to retire and submitted a formal letter of resignation through her attorney to the NPSB's Director of Personnel, Linda Page ("Page") [Doc. 41-3 ¶ 14]. The record does not indicate that Hardison made any allegations of discrimination at this time.

Prior to her placement on administrative leave, Hardison alleges that Skinner unfavorably treated her in the following manners: (1) he asked her if she was going to resign or be terminated from employment on at least five occasions; (2) he denied her the right to participate in internal audits; (3) he prevented her from attending staff meetings to discuss concerns with federal programs; (4) he failed to grant her request for additional staff; (5) he yelled at and humiliated her in front of other NPSB employees; and (6) he prevented her from accessing her work computer and communicating with other NPSB employees [Doc. 47-1 p.6-7]. Hardison alleges that other similarly situated non-minority employees did not experience such unfavorable treatment [*Id.*].

Hardison initiated this action on January 31, 2018, to recover for racial and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and Louisiana's Employment Discrimination Law ("LEDL")[2] [Doc. 1]. She further seeks recovery under 42 U.S.C. § 1983 ("§ 1983") and Louisiana's Teacher Tenure Law[3] on the ground that Defendants constructively discharged her without due process of law [*Id.*]. In addition, Hardison asserts claims under Louisiana state law for intentional infliction of emotional distress and defamation [*Id.*].

Defendants filed this Motion for Summary Judgment, contending that Hardison's claims should be dismissed with prejudice. In support of their Motion, Defendants submitted the declarations of Linda Page [Doc. 41-3] and

---

[1]   42 U.S.C. § 2000e, *et seq*.

[2]   Louisiana Revised Statutes 23:301, *et seq*.

[3]   Louisiana Revised Statutes 17:441, *et seq*.

Superintendent Dale Skinner [Doc. 60]. In response, Hardison filed an Opposition [Doc. 47] supported by her own declaration [Doc. 47-3]. Additionally, Hardison filed the Motion to Strike, asserting that Page lacks personal knowledge with respect to many statements made in her declaration.

## PLAINTIFF'S MOTION TO STRIKE

The Court will first address Hardison's Motion to Strike. Hardison moves the Court to strike substantial portions of Page's declaration based primarily on her perception that Page lacks personal knowledge regarding the subject matter asserted. Rule 56(c)(2) of the Federal Rules of Civil Procedure permits a party to object to summary judgment evidence when the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.[4] *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). ("[T]he new rule allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence.'"); *Cutting Underwater Technologies USA, Inc. v. Eerie U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing a motion to strike."). Accordingly, the Court treats the pending Motion to Strike as an objection to the relevant portions of the affidavit.

Rule 56 allows a party to use an affidavit to support or oppose a motion for summary judgment. *See* Fed.R.Civ.P. 56(c)(1)(A). Such affidavits, however, "must

---

[4] *See also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments ("There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.").

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." *Id.* 56(c)(4). The Fifth Circuit has held that an official title alone is sufficient to indicate a basis of personal knowledge when that title clearly identifies the official's sphere of responsibility and the facts stated in the affidavit are within that sphere. *Cutting Underwater Technologies*, 671 F.3d at 516 (quoting *Rutledge v. Liab. Ins. Indus.*, 487 F.Supp. 5, 7 (W.D. La. 1979)).

In her declaration, Page articulates her job duties as Director of Personnel and demonstrates a direct involvement in the contested matters. Hardison has not provided any compelling reasons or evidence for the Court to disregard Page's testimony. Therefore, the Court overrules Hardison's objections and gives the statements made in Page's declaration the weight they are due.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the non-movant. *Id.* "[A] party seeking summary judgment always

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

"In an employment discrimination case, [the Fifth Circuit] focus[es] on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447 (5th Cir. 1996). Unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden. *Grimes v. Texas Dept. Of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). In response to a motion for summary judgment, it is therefore incumbent upon the non-moving party to present evidence – not just conjecture and speculation – that the defendant discriminated against the plaintiff on the basis of the protected characteristic in question. *Id.*

**B.**     **Title VII and LEDL Claims for Race and Gender Discrimination**

Based on the alleged manners in which Skinner unfavorably treated her prior to her resignation, Hardison asserts that Defendants discriminated against her due to her race and gender in violation of Title VII and LEDL. Both Title VII and LEDL

prohibit employers from discriminating based on "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1); La. Rev. Stat. Ann. § 23:332. As Title VII and LEDL share the same scope, claims under LEDL are analyzed under the Title VII framework and jurisprudential precedent. *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

When there is no direct evidence of discrimination, as in this case, courts apply the burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to determine whether an employer is liable for employment discrimination under Title VII. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142; 120 S.Ct. 2097, 2106; 147 L.Ed.2d 105 (2000) (*McDonnell Douglas* and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases."). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, if the employer offers such a justification, the burden shifts back to the plaintiff, who can then attempt to demonstrate that the defendant's proffered reason is merely a pretext for discrimination. *Id.* at 804. Ultimately, the burden of persuasion that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Black v. Pan Am. Labs.*, L.L.C., 646 F.3d 254, 259 (5th Cir. 2011) ("The employer's burden is one of production, not persuasion, and does not involve a credibility assessment.").

### i. *Prima Facie* Case

A plaintiff can establish a *prima facie* case of employment discrimination by proving the following: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 984–85 (5th Cir. 2015) (citing *McDonnell Douglas*, 411 U.S. at 802).

Defendants only dispute Hardison's ability to establish the third element, contending that Hardison's *prima facie* case fails because she suffered no adverse employment action. Hardison maintains that she suffered an adverse employment action by virtue of (1) material changes in job duties and (2) a constructive discharge from employment.

#### a. Material Changes in Job Duties

With respect to her first argument, Hardison claims that the denial of her ability to participate in internal audits, attend staff meetings regarding federal programs, and hire additional staff, as well as her placement on administrative leave, materially changed her job duties so as to constitute an adverse employment action. The Court disagrees.

For Title VII discrimination claims, an adverse employment action implicates an "ultimate employment decision," such as hiring, firing, demoting, promoting, granting leave, and compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 560

(5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). The mere loss of some job responsibilities does not constitute an adverse employment action. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 504 (5th Cir. 2014).

Defendants argue that the scope of an "ultimate employment decision" as contemplated by the Fifth Circuit does not encompass trivial decisions pertaining to participation in internal audits, attendance at staff meetings, and additional staff requests. Hardison attempts to rebut this argument by relying upon several cases wherein the Fifth Circuit held an adverse employment action occurred when the plaintiff lost some job responsibilities after being transferred or demoted.[5] The Court finds these cases distinguishable from the present action. Although Hardison may have experienced a change in some job responsibilities, this change did not occur in the context of a transfer, demotion, or reassignment. Rather, Hardison retained her position as Director of Personnel until her resignation and has not presented any evidence of a material change that rises to the level of an ultimate employment decision.

Regarding Hardison's administrative leave, Defendants cite to two cases for the proposition that administrative leave is not an adverse employment action: *McCoy v. City of Shreveport* and *Breaux v. City of Garland*. In *McCoy*, the Fifth Circuit affirmed the district court's holding that "placing [the plaintiff] on paid leave

---

[5] *See Thompson v. City of Waco,* Texas, 764 F.3d 500 (5th Cir. 2014); Alvaredo *v. Tex. Rangers*, 492 F.3d 605 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757 (5th Cir. 2001); *Forsyth v. City of Dall.*, 91 F.3d 769 (5th Cir. 1996).

9

– whether administrative or sick – was not an adverse employment action." 492 F.3d at 559. Likewise, the Fifth Circuit held in *Breaux* that the placement of a police officer on paid administrative leave was not adverse employment action. 205 F.3d 150, 158 (5th Cir. 2000). Pursuant to Fifth Circuit precedent, the Court concludes that Hardison's placement on paid administrative leave does not constitute an adverse employment action.

### b. Constructive Discharge

In addition, Hardison argues that her voluntary retirement masked a constructive discharge, which courts recognize as an adverse employment action under certain circumstances. Hardison bases this argument on the alleged multiple occasions that Skinner asked her if she was going to retire or be terminated and on Skinner's alleged harassment of her. Specifically, Hardison claims that she experienced severe harassment and humiliation when Skinner disrupted one of her meetings and, on another occasion, kicked her out of a federal programs meeting [Doc 47-1 p. 2-4].

A constructive discharge occurs when the employer renders working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). In determining whether a reasonable employee would feel compelled to resign, the court considers the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering,

>harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014).

Defendants argue that Hardison's unsubstantiated allegations of harassment and threats of termination do not meet the standard for constructive discharge. The Court agrees. Even construing these six factors in a light most favorable to Hardison, she has failed to demonstrate that her employment conditions were so objectively intolerable that a reasonable employee would have felt compelled to resign. During her leave, Hardison was not demoted, and her salary and benefits remained unchanged. She received a writing from the NPSB indicating that her administrative leave would only last until resolution of the investigation into MEP mismanagement. However, Hardison resigned before the resolution of Defendants' investigation.

Notably, Hardison states in her Complaint that she sought counsel before deciding to resign [Doc. 1 ¶ 26]. After consultation regarding her circumstances and options, her attorney advised her to "go back to work for two weeks and then retire." [*Id.*]. The record does not indicate that the letter of resignation drafted by Hardison's attorney contained any allegations of discrimination, harassment, or humiliation—undermining Hardison's subsequent claim that she resigned because of this type of conduct.[6]

---

[6] As would be expected, Plaintiffs alleging constructive discharge often express allegations of discrimination, harassment, and humiliation to their employers prior to or in their letters of resignation. *See, e.g., Walker v. Thompson*, 214 F.3d 615, 622 (5th Cir. 2000) ("[Plaintiff] contacted an attorney…regarding the racial discrimination and harassment she perceived…[Her attorney] sent [Plaintiff's employer] a letter that summarized [Plaintiff's] complaints…and made it clear that [Plaintiff] did not want to resign or take legal action but instead wanted the illegal

11

Additionally, other than Skinner allegedly disrupting one of her meetings and asking her to leave a federal programs meeting, Hardison has otherwise failed to set forth specific instances of harassment that rendered her work environment objectively intolerable. Accordingly, the Court concludes that there is no genuine issue concerning Hardison's voluntary resignation. Due to Hardison's inability to establish a *prima facie* case of race and gender discrimination, the Court dismisses Hardison's Title VII and LEDL claims with prejudice.

### ii. Employer's Legitimate, Non-discriminatory Reason

Even assuming *arguendo* that Hardison could establish a *prima facie* case of race and gender discrimination, summary judgment is nonetheless appropriate because Hardison failed to create a genuine issue of pretext.

Defendants submit the declarations of Linda Page [Doc. 41-3] and Defendant Dale Skinner [Doc. 60] along with multiple exhibits evidencing their communications with the LDOE to demonstrate that any alleged adverse employment action was made in connection with the LDOE's investigation into MEP discrepancies. This evidence indicates that Hardison was placed on administrative leave only after the LDOE's independent audit revealed discrepancies in the management, oversight, and operations of the MEP and a need for the NPSB to reimburse the LDOE almost $80,000. Considering this, the Court finds that investigation into misconduct that

---

conduct to cease."); *Rayborn v. Bossier Par. Sch. Sys.*, 198 F.Supp.3d 747, 756 (W.D. La. 2016), *aff'd sub nom.*, *Rayborn v. Bossier Par. Sch. Sys.*, 881 F.3d 409 (5th Cir. 2018) (Plaintiff's letter of resignation "contained allegations of…retaliation, harassment, and humiliation"); *Dhillon v. Lincare Inc. of Delaware*, CIV.A. 06-1822, 2008 WL 2920259, at *3 (W.D. La. June 19, 2008) ("[Plaintiff] typed a letter of resignation…to the Human Resources Department, which set forth her complaints of harassment").

had taken place in a federal program under Hardison's supervision is a legitimate, non-discriminatory reason for placing her on administrative leave.

The burden then shifts to Hardison to present evidence that the Defendants' non-discriminatory reason is a pretext for race and gender discrimination. To establish pretext, the plaintiff must present evidence rebutting each of the nondiscriminatory reasons the employer produces. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). A plaintiff may establish pretext by showing that her employer's justification is false or that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment. *Id.* In order to survive a motion for summary judgment, a plaintiff must produce *substantial* evidence of pretext. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001) (emphasis added).

Hardison asserts that Defendants' justification is false because she was not responsible for the discrepancies revealed in the MEP independent audit and any mismanagement did not fall within the scope of her job duties. Rather, she maintains that the LDOE is responsible for training interviewers of prospective MEP families with respect to techniques and eligibility requirements. However, Hardison does not present any evidence regarding Defendants' knowledge of the extent of her involvement. Other than her own unsubstantiated testimony denying responsibility for the revealed mismanagement, Hardison has not offered any evidence from which a jury could infer that Defendants' decision to place her on administrative leave was

13

for a reason other than to investigate problems with her supervision of the NPSB's federal programs department.

Significantly, even if the Plaintiff was blameless in the performance of her job duties, this Court "cannot protect [employees] … from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Braymiller v. Lowe's Home Centers Inc.*, 325 Fed.Appx. 311, 315 (5th Cir. 2009); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988); *Johnson v. Acosta*, CIV.A. 10-1756, 2011 WL 4381706, at *13 (E.D. La. Sept. 20, 2011). Because Hardison failed to present substantial evidence of pretext,[7] there is not a genuine issue as to whether Skinner's decision to place Hardison on administrative leave was a pretext for racial and gender discrimination. Summary judgment, therefore, is appropriate.

C. **Violations of § 1983 and Louisiana's Teacher Tenure Law**

In order to prevail in a civil rights action under § 1983, the plaintiff must prove by a preponderance of the evidence that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution, or a federal statute, or both. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). Hardison contends that Defendants violated her due process rights under the Fourteenth Amendment[8] of the United States Constitution because she was not afforded the

---

[7] Hardison does not argue that her race or gender was a motivating factor in Defendants' decision to place her on administrative leave pursuant to the modified *McDonnell Douglas* analysis. She only presents arguments as to pretext.

[8] The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty or property, without due process of the law." U.S. Const. Amend. XIV, § 1.

14

protections for tenured teachers provided in La. R.S. 17:442, the "Louisiana's Teacher Tenure Law," prior to her alleged constructive discharge. Defendants, on the other hand, move for summary judgment on the ground that Hardison's voluntary retirement renders her due process claims moot.

To establish a due process claim, the plaintiff must show that she was deprived of a constitutionally protected liberty or property interest. *Giles v. Shaw Sch. Dist.*, 655 Fed.Appx. 998, 1003 (5th Cir. 2016) (citing *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 (5th Cir. 1984)). "State law controls the analysis of whether [the plaintiff] has a property interest in his employment sufficient to entitle him to due process protection." *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996).

The Fifth Circuit has held that tenured teachers under Louisiana's Teacher Tenure Law have a constitutionally protected property interest in continued employment. *See Franceski v. Plaquemines Par. Sch. Bd.*, 772 F.2d 197, 199 (5th Cir. 1985) ("It is true that [the plaintiff], as a tenured teacher, had a constitutionally protected property interest in continued employment."). Defendants do not dispute that Hardison is a tenured teacher under Louisiana's Teacher Tenure Law. Thus, she enjoyed a constitutionally protected property interest in continued employment and was entitled to the following protections prior to her resignation.

Louisiana's Teacher Tenure Law provides, in relevant part, the following protections to certain tenured employees:

> A teacher with tenure shall not be disciplined except upon written and signed charges by the superintendent or his designee of poor

15

> performance, willful neglect of duty, incompetency, dishonesty, immorality, or of being a member of or contributing to any group, organization, movement, or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if furnished with a copy of such written charges and given the opportunity to respond. The teacher shall have ten calendar days from written notice of the charges to respond, in person or in writing.

La. Rev. Stat. Ann. § 17:443.  "Discipline" is defined as "suspension without pay, reduction in pay, or involuntary demotion or dismissal."  La. Rev. Stat. Ann. § 17:441(2).

Because "discipline" as defined in the statute does not include administrative leave, Defendants were not obligated to provide notice and an opportunity to respond prior to placing Hardison on leave.  However, Hardison maintains that her alleged constructive discharge constitutes an "involuntary dismissal" and that she was deprived of these statutory protections when Defendants failed to provide written notice of the charges against her and an opportunity to respond.  The Court finds that, for the reasons articulated in Part B, *supra*, Hardison did not suffer a constructive discharge.  Accordingly, the Court dismisses with prejudice Hardison's claims for due process violations under § 1983 and Louisiana's Teacher Tenure Law.

D.  **Intentional Infliction of Emotional Distress**

Defendants further seek dismissal of Hardison's claims for intentional infliction of emotional distress ("IIED").  Under Louisiana law, a plaintiff must establish three elements to recover for IIED: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or

16

knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018) (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).

In a workplace setting, the distress suffered by the employee must be "more than a reasonable person could be expected to endure" due to conduct of a nature "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Nicholas v. Allstate Ins. Co.*, 756 20.2d 1017, 1028, 1999-2522 (La. 8/31/00)). Recovery for IIED in an employment context is generally limited to "cases involving a pattern of deliberate, repeated harassment over a period of time." *Smith v. Amedisys Inc.*, 298 F.3d 434, 449 (5th Cir. 2002) (citing *White*, 585 So.2d at 1209).

Plaintiff bases her IIED claim on the following conduct: "[Hardison] was under close, intense, and constant scrutiny, subjected to disciplinary action and continuously harassed and told, at least on five occasions that she must resign or be terminated" [Doc 47-1]. This conduct does not rise to the level of severity contemplated by Louisiana jurisprudence. Accordingly, the Court finds that Hardison has failed to show conduct that was extreme, outrageous, or more than a reasonable person could be expected to endure. Hardison's claim for Intentional Infliction of Emotional Distress is dismissed with prejudice.

17

### E. **Defamation**

Finally, Defendants seek dismissal of Hardison's defamation claim. To prevail on a defamation action in Louisiana, a plaintiff must prove the following four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy*, 03-1146, p. 11 (La. 1/21/04), 864 So. 2d 129, 139. These elements necessarily require a plaintiff to prove that the defendant acted with actual "malice or other fault" in publishing "a false statement with defamatory words which caused plaintiff damages." *Sassone v. Elder*, 626 So .2d 345, 350 (La.10/18/93).

Defendants contend that Hardison cannot establish a defamation claim because any alleged statements made are conditionally privileged. In support, Defendants claim that their allegations in the pleadings were made in good faith under a reasonable belief that they were true, as Hardison served as the director of a program under investigation by the LDOE. Hardison, to the contrary, argues that Defendants lacked good faith because she was not responsible for the MEP discrepancies.

The key question is whether Defendants lacked a reasonable belief in the truth of any statements related to Hardison's role in problems associated with the MEP and her supervision of the NPSB's federal programs. Hardison's actual involvement in the mismanagement is immaterial.[9]

---

[9] Additionally, there is precedent under Louisiana law that, "[a]n employer's communication regarding a subject in which it has an interest or a duty is not considered

18

The evidence in the record, consisting of communications from the LDOE to the NPSB, gave Defendants more than a reasonable belief that mismanagement occurred under Hardison's supervision. The Court finds that Defendants have demonstrated that any allegedly defamatory statements against the Plaintiff are privileged. Accordingly, Plaintiff's claims of defamation are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) Plaintiff's Motion to Strike is DENIED; and

2) Defendants' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims asserted in the Complaint [Doc. 1] are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers on this 25th day of September, 2020.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

published when made in good faith." *Heflin v. Sabine Ass'n of Retarded Citizens*, 96-782 (La. App. 3 Cir. 12/26/96), 685 So. 2d 665, 667.